UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LISA SCOTT                                                                                    PLAINTIFF

V.                              CASE NO. 3:20CV00245-JTR

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                      DEFENDANT

## ORDER

**I.   Introduction:**

Plaintiff, Lisa Scott ("Scott"), applied for Title II disability benefits on January 12, 2018, alleging disability beginning on September 8, 2018. (Tr. at 16). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on November 20, 2019. (Tr. at 26). The Appeals Council denied her request for review on July 31, 2020, making the ALJ's denial of Scott's application for benefits the final decision of the Commissioner. (Tr. at 1-3).

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

**II.   The Commissioner's Decision:**

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that Scott had not engaged in substantial gainful activity since the alleged onset date of September 8, 2017.[2] (Tr. at 18). The ALJ found, at Step Two, that Scott had the following severe impairments: diabetes mellitus, left shoulder degenerative joint disease with nerve impingement and with rotator cuff and slap tears, lumbar spondylosis and radiculopathy, right hip bursitis, hyperlipidemia, and neuropathy. (Tr. at 19).

After finding that Scott's impairments did not meet or equal a listed impairment (Tr. at 20-21), the ALJ determined that Scott had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations. *Id*. Scott could never climb ladders, ropes, or scaffolds; she could only occasionally reach overhead with the left upper extremity; and she should avoid concentrated exposure to extreme cold and excessive vibration. *Id*.

The ALJ determined that Scott was unable to perform any of her past relevant work. (Tr. at 24). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Scott's age, education, work experience and RFC,

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work23; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

jobs existed in significant numbers in the national economy that she could perform, including positions as production assembler and sales attendant. (Tr. at 26). Thus, the ALJ concluded that Scott was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Scott's Arguments on Appeal

Scott contends that the ALJ's decision to deny her application for benefits is not supported by substantial evidence. She argues that: (1) the ALJ did not carry his burden at Step Five,; and (2) the medical source statement of Noma Moyo-Peters, M.D. (Scott's family practice physician), which Scott provided to the Appeals Council after the hearing, provided sufficient support to overturn the ALJ's decision denying benefits.

Conservative treatment improved Scott's conditions. Diabetes and hyperlipidemia were controlled by medication, neurotomy helped with her back

pain, and a left shoulder surgery proved beneficial and returned shoulder function. (Tr. at 21-24). Also, while Scott complained she could not sleep due to sleep apnea, records show that she did not use her CPAP machine regularly; Scott testified that when she did, it helped. (Tr. at 43, 952-956).

Objective evidence showed only mild-to-moderate conditions. A 2019 lumbar MRI showed lumbar degenerative disc disease with no spinal stenosis. (Tr. at 11-12). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). The ALJ noted that Scott did not use a back brace (Tr. at 52), and Scott said that treatment helped with pain. (Tr. at 43-52).

A 2018 left shoulder MRI showed rotator cuff tear with nerve impingement. (Tr. at 1021-1024). But Scott had grossly normal range of motion testing, gait, strength, reflexes, and sensory function. (Tr. at 23-24, 847-863, 955, 979, 993, 1017, 1103). And surgery in 2019 improved Scott's shoulder problems. (Tr. at 54). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

While Scott complained of problems from neuropathy and plantar fasciitis, she did not walk with assistive devices, and treatment for those conditions was conservative. (Tr. at 23, 52, 1019-1026). The need for only conservative treatment

contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Moreover, Scott could perform a variety of activities, like shopping in stores, fixing meals, doing chores, going to church once a week, visiting with family, and driving a car. (Tr. at 54-58, 276-281). The ability to perform these activities is not consistent with Scott's complaints of disabling pain. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

The two Disability Determination Services medical experts reviewed the records and found that Scott could perform light exertional work with no additional limitations. (Tr. at 24). However, the ALJ credited Scott's complaints of pain and imposed additional limitations, including a limitation to occasional overhead reaching with the left upper extremity. (Tr. at 21).

Scott contends that the ALJ did not resolve a conflict at Step Five between the *Dictionary of Occupational Titles* ("DOT") and the VE's testimony. An ALJ has an affirmative duty to ask about any possible conflict between the VE's testimony and the DOT before relying on that testimony to support his findings. Soc. Sec. Ruling ("SSR") 00-4p (2000), 2000 SSR LEXIS 8; *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014).

Here, the ALJ recognized an apparent conflict between the RFC for occasional overhead reaching and the DOT jobs that the VE identified, which required frequent reaching.[3] (Doc. No. 14 at 29). The ALJ specifically asked the VE about the conflict, and the VE said that she relied upon her "education, training, and experience" to harmonize the conflict. (Tr. at 61-62). After a follow up question by the ALJ, the VE further testified that she had dealt with employers and employees where the occasional overhead reaching limitation was present. *Id*. In short, the VE confirmed that Scott could perform the jobs that she identified.

In specific cases like this, dealing with the subtle difference between occasional and frequent reaching, district courts have held that a VE may rely on her judgment and experience with the jobs in questions to resolve any possible conflict. *See Porter v. Berryhill*, 2018 U.S. Dist. LEXIS 37141 *42 (W.D. Mo. Mar. 7, 2018); *Yeley v. Berryhill*, 2018 U.S. Dist. LEXIS 154465 *26-28 (E.D. Mo. Sept. 11, 2018); *Smith v. SSA*, 2020 U.S. Dist. LEXIS 240226 *7 (E.D. Ark. Dec. 22, 2020). In a similar case from this Court, where surgery for a rotator cuff tear improved the claimant's condition and the ALJ limited the claimant to occasional overhead reaching, the VE's properly relied upon his "experience" to resolve the conflict

---

[3] The DOT does not address "overhead" reaching, and the ALJ pointed this out when he asked the VE about the apparent conflict. (Tr. at 61-62).

7

between the RFC for occasional overhead reaching and DOT jobs requiring frequent reaching. *Mobley v. Saul*, 2020 U.S. Dist. LEXIS 134086, CASE NO. 3:19CV00198-JTR (E.D. Ark. July 29, 2020). While a few cases from this Circuit have reversed an ALJ because the ALJ failed to resolve a reaching conflict, those cases can be distinguished, because the VE in those cases either did not address the conflict or gave a one-word response.[4] In this case, however, the ALJ: (1) recognized the conflict; (2) asked the VE about the conflict; (3) followed up with another question about the VE's experience with the jobs in question; and (4) discussed this conversation in his decision.[5] (Tr. at 26, 61-62).The ALJ met his Step Five burden.

Scott also finds fault with the Appeals Council's decision not to overturn the ALJ's decision. She asserts that a medical source statement from Dr. Moyo-Peters, filled out after the hearing, would have changed the ALJ's decision had it been timely submitted to the ALJ. (Tr. at 8-9). Dr. Moyo-Peters opined in her statement

---

[4] *See Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); *O'Leary v. Colvin*, 2014 U.S. Dist. LEXIS 199341, at *3 (W.D. Mo. Feb. 7, 2014).

[5] Defendant correctly pointed out that Scott's attorney did not ask the VE any questions about a possible conflict at the hearing. (Tr. at 61-63).

that Scott would be unable to perform even sedentary work, based on lumbar degenerative disc disease and left shoulder problems. *Id*.

First, the opinion was on a short checkbox form with little elaboration or citation to the medical evidence. (Tr. at 8-9). *See Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018). Second, it conflicted with Dr. Moyo-Peters' clinical findings of mild-to-moderate conditions that responded well to treatment. (Tr. at 847-863, 955-993). Third, the opinion issued well after the ALJ's decision to deny benefits. Finally, Scott's reported daily activities undermine the veracity of Dr. Moyo-Peters' statement. The Court concurs with the Appeals Council's determination that Dr. Moyo-Peters' statement did not "show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. at 2).

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at Step Five, and the Appeals Council properly characterized Dr. Moyo-Peters' statement. The finding that Scott was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 22nd day of July, 2021.

                                                                       */s/ J. Thomas Ray*
                                                           UNITED STATES MAGISTRATE JUDGE